ABNEY, Respondent, v. MARSHALL, Appellant.

St. Louis Court of Appeals, April 16, 1907.

1. EVIDENCE: Parol Evidence as to Written Contract: Lost Contract. Where the contents of a written instrument were in issue and the instrument itself was not shown, the presumption should be indulged that the contract as verbally agreed upon prior to its execution was substantially incorporated¹ in the contract, there being no evidence as to the actual contents of the instrument.

2. CHATTEL MORTGAGES: Removal From County. In an action for damages caused to plaintiff by the defendant's wrongful foreclosure of a chattel mortgage held by him on the plaintiff's property, which mortgage was foreclosed on the ground that the plaintiff moved the property out of the county contrary to the terms of the mortgage, the issue of whether the mortgagee consented that the mortgagor could move the property out of the county was properly in issue and the verdict, finding such consent was given on substantial evidence, will not be disturbed.

Appeal from Scott Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. H. Miller* and *Marshall Arnold* for appellant.

It being conceded by both respondent and appellant that the chattel mortgage and note was the consummation of the deal between the parties, and there being no ambiguity or uncertainty in the terms of either, then oral testimony was incompetent to vary its terms. The court, over repeated objections of appellant, permitted such proof to be detailed to the jury. Indeed, the petition is drawn upon the theory of an antecedent agreement. The admission of this evidence was error of the most pronounced kind. Houck v. Frisbie, 66 Mo. App. 19; Tuggle v. Callison, 143 Mo. 527; Koehring v. Muemminghoff, 61 Mo. 403; Staluth v. Guaranty Co., 81 Mo. App. 627; Electric Co. v. Bry, 88 Mo. App. 135; Halliday v. Lesh, 85 Mo. App. 285.

*H. C. O'Bryan* for respondent.

STATEMENT.—Omitting caption and signatures, the petition is as follows:

"Plaintiff states that on, to-wit, the eighteenth day of November, 1901, he bought a log team, consisting of eight head of oxen, one wagon, log chains and seventeen head of hogs from the firm of Marshall & Warren, composed of James Marshall and Lige Warren, for the sum of $800, due in sixteen months, for which a note was given, and there was an agreement said $800 should be paid in hauling logs as much as $50 each month.

"Further states said firm agreed to employ plaintiff hauling logs to their sawmill so as to enable him to meet said obligation of $50 per month and to pay his provision, feed and store bill over and above said $50 per month to be applied on the price of team. That thereafter said Marshall bought out his partner's interest in said business and assumed to perform said partnership obligation and contract with this plaintiff and this plaintiff accepted the individual obligation of said Marshall in that behalf.

"That this plaintiff entered upon said contract and faithfully performed the same for five months and seven days and paid in hauling all his bills he had contracted and in addition thereto $300 on the debt for which the $800 note was given, and was ready, willing and able to perform the same in full and requested the right to do so of the defendant. That defendant refused and failed to perform his contract when requested to do so, and turned plaintiff off, and plaintiff sought and obtained employment with Charles Jones of Bell City, in Stoddard county, and carried his team there by the consent of said Marshall. Wherefore said Marshall seized plaintiff's team, hogs, wagon, chains without authority and before the maturity of said note and appropriated them to his own use by selling them under said mortgage in violation of the terms of said contract; that by reason of the premises plaintiff is damaged in the sum of $800, for which sum and costs he prays for judgment."

The answer is as follows:

"Defendant for his answer to plaintiff's amended petition denies each and every allegation in the petition and prays judgment.

"Further answering the defendant charges that to secure the $800 named in plaintiff's petition as the purchase price of certain cattle, etc., the plaintiff executed a chattel mortgage on the property named. That said mortgage provided that in case of a sale or removal or an attempt to sell or remove the mortgaged property from the county of Scott, State of Missouri, said note of $800 should, at the election of defendant, become immediately due and payable.

"That plaintiff sold, without consent of mortgagee, a portion of the hogs named in said mortgage and he did not account to defendant for the proceeds thereof.

"That said plaintiff, without mortgagee's consent, removed said property from Scott county, Missouri, in violation of the terms of said mortgage, and defendant

thereupon exercised his right of election and held the note and debt to be due and payable.

"That under the terms of said mortgage defendant seized said property and sold same at public sale under the terms and conditions named therein and at said sale became the purchaser thereof. Having fully answered defendant prays judgment."

BLAND, P. J. (after stating the facts).—James Marshall, the defendant, and Lige Warren, in 1901, owned and operated a sawmill in Scott county, Missouri. Marshall owned teams and log wagons, which were used for the purpose of hauling saw logs to the mill. Plaintiff was employed by the firm of Marshall and Warren to drive one of the teams. His evidence tends to show that on November 18, 1901, he entered into a contract with Marshall and Warren for the purchase of eight head of oxen, one log wagon, with chains, and seventeen head of hogs, at the price and sum of eight hundred dollars, to be paid in sixteen months, in monthly installments of fifty dollars, to be earned by plaintiff in hauling logs to the mill; that in pursuance of the contract, plaintiff, on November twenty-first, executed and delivered to Marshall his promissory note for eight hundred dollars, payable in sixteen months, in monthly installments of fifty dollars per month, and secured said note by chattel mortgage on the property purchased. The mortgages contain a clause prohibiting plaintiff from removing the property from Scott county, and provided that a removal of the same from the county should, at the election of Marshall, work a forfeiture. It appears by the bill of exceptions that the mortgage was read in evidence but it was not copied in the bill or abstracted in the printed abstracts. It also appears that Marshall had lost or mislaid the note and it was not produced in evidence, and there is no evidence whatever of its contents, nor of the contents of the chattel mortgage, other than stated

above. Plaintiff and his witness Shelton, who was present at the time the trade was made, swore positively that the contract was as above stated, and that the installments of fifty dollars were to be paid by plaintiff by hauling logs to the mill; and the evidence all shows that monthly credits were given on the note, from month to month, for hauling, the credits aggregated $213; and we think it can be read between the lines of Marshall's testimony, that the note was to be paid in the manner sworn to by plaintiff and his witness, provided Marshall did not sell the mill within the sixteen months. In the absence of the note itself, or any proof of its contents, the presumption should be indulged, that the contract, as agreed upon verbally prior to the execution of the note, was substantially incorporated in the latter. It is more reasonable and equitable to presume that the contract was expressed in writing than it is to assume that an important element of it was omitted, and that the note was in the ordinary form. This view of the case disposes of defendant's objection to the oral evidence of the contract on the ground it contradicted or varied the terms of the written contract as evidenced by the note and mortgage.

Marshall acquired Warren's interest in the mill and subsequently (April, 1902) sold the mill to a corporation. Plaintiff could not make satisfactory terms with the new owner of the mill, to haul logs for it, and was thrown out of employment for both himself and team. In this situation, plaintiff looked elsewhere for work and found that he could get a job of hauling, at satisfactory terms, at a mill in New Madrid county, and at another in Stoddard county, the latter being about nine miles from his home in Scott county; and his testimony tends to show that he communicated these facts to defendant and the latter gave plaintiff permission to take the team to either mill for the purpose of getting work, and about May first, plaintiff drove the team to the mill in Stod-

dard county for the purpose of hauling logs, but on the succeeding day defendant caused plaintiff's arrest, took the oxen, wagon and chains from him, and took them back to Scott county, where he sold them under the mortgage for four hundred dollars. Defendant's evidence tends to show that he not only refused to give his consent to the removal of the property from Scott county, but expressly forbade plaintiff to remove it. There is no evidence that plaintiff sold any of the hogs without defendant's consent, and it tends to show that defendant got the proceeds of all the hogs sold by plaintiff.

The court gave the following instruction for plaintiff:

"1. The court instructs you that if you believe from the evidence that the firm of Marshall & Warren employed the plaintiff to haul logs for them till he should pay for a team of oxen and wagon and hogs according to the note given therefor for $800, to be paid $50 per month in hauling, and shall further believe from the evidence that said plaintiff did haul for them for five months and did make these monthly payments as per contract, when Marshall refused to furnish him work, and if you believe plaintiff went to Stoddard county to haul in order to make his payments and that he went with Marshall's consent, and further believe that Marshall took said property from him, after refusing to furnish him work, then you will find the issues for plaintiff and assess his damage at such sum as you may believe he is damaged, not to exceed the amount sued for."

And the following for defendant:

"2. The court instructs the jury that if you believe and find from the evidence that the chattel mortgage offered in evidence covered the property in suit, and that it provided that a removal of the property from Scott county without the consent of the mortgagee should work a forfeiture of the mortgage, and you further find from the evidence that plaintiff did, without such con-

sent, move the property out of Scott county, then the defendant had a right to seize and sell said property and your verdict will be for defendant."

And refused an instruction asked by defendant, to the effect that the jury should disregard all the oral testimony in respect to the contract. The verdict and judgment were in plaintiff's favor.

It will be seen by the instructions asked and given, that the issues in the case were narrowed down to one, to-wit, whether or not defendant gave his consent to plaintiff for the removal of the team to Stoddard county, for the purpose of finding work. There was substantial evidence tending to show that defendant gave his consent, and we can discover no valid reason in the record for disturbing the verdict.

The judgment is affirmed. All concur.